# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN J. BANKART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 14-10716-FDS |
| | ) |
| JIN W. HO, JEANNETTE LING HO, and | ) |
| EDGE CAPITAL MANAGEMENT I, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS OR TO STAY

SAYLOR, J.

This case involves an alleged breach of contract by defendants Jin W. Ho, Jeannette Ling Ho, and Edge Capital Management I, LLC. Plaintiff Alan J. Bankart contends that defendants failed to pay a promissory note that they executed and delivered as part of a settlement from a suit adjudicated in the Arizona Superior Court.

Plaintiff has sued for breach of contract and common law fraud as a result of defendants' failure to pay the note. On May 9, 2014, defendants moved to dismiss or stay this action pending proceedings in the Arizona Superior Court. For the following reasons, the case will be stayed as to Jin Ho and Jeannette Ho, who have filed for bankruptcy. The motion will otherwise be denied.

## I.  Background

At some point, Alan J. Bankart invested approximately $2 million in Edge Capital Management I, LLC, a company that was managed by Jin W. Ho. Edge Capital is now defunct. On May 12, 2009, Bankart sued Jin Ho, Jeannette Ho, and Edge Capital in the Arizona Superior

Court alleging various acts of wrongdoing in connection with that investment. (Def. Mot. Ex. A). The parties settled that case in early 2010. (Def. Mot. Ex. B). As part of the settlement, defendants executed and delivered a note promising to pay Bankart $1,907,500 in periodic payments, beginning with a $50,000 installment on December 31, 2010. Def. Mot. Ex. C). The Arizona Superior Court accordingly entered a judgment in favor of Bankart for the sum of $1,907,500 on March 10, 2010. (Pl. Opp. Ex. A).

Bankart contends that on December 31, 2010, defendants failed to pay the installment due on the note. (Bankart Aff. ¶ 10). On March 15, 2012, Bankart filed pleadings in the Arizona Superior Court seeking a debtor examination for the limited purpose of determining defendants' assets and ability to pay. (Def. Mot. Ex. F).

On March 12, 2014, Bankart brought the present action for breach of contract and fraud, demanding $1,907,500, along with interest and attorneys' fees. (Dkt. 1). On May 9, 2014, defendants moved for dismissal or a stay on the ground that the dispute should be settled in the Arizona Superior Court. (Dkt. 5).

On May 20, 2014, the scheduled date of the debtor examination, Jin Ho and Jeannette Ho filed a Chapter 11 voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Arizona. (Dkt. 10).

## II. Analysis

### A. Motion To Stay or Dismiss Under the Bankruptcy Code

Pursuant to the United States Bankruptcy Code, 11 U.S.C. § 362:

> a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title,

2

> or to recover a claim against the debtor that arose before the commencement of the case under this title.

"The automatic stay is one of the fundamental protections that the Bankruptcy Code affords to debtors." *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002). "The stay springs into effect upon the filing of a bankruptcy petition." *Id.* (citing *Sunshine Dev., Inc. v. FDIC*, 33 F.3d 106, 113 (1st Cir. 1994)).

Jin and Jeannette Ho filed a Chapter 11 voluntary bankruptcy petition in the United States District Court for the District of Arizona on May 20, 2014. The automatic stay provision of 11 U.S.C. § 362 took effect on that date. Therefore, the present action is stayed as to Jin and Jeannette Ho.

Defendants contend that the automatic stay should also apply to Edge Capital, even though that company has not filed for bankruptcy. They contend that allowing the suit to proceed against Edge Capital would disrupt the orderly conduct of the Arizona bankruptcy proceedings. Defendants further contend that declining to stay this case would allow plaintiff to circumvent the bankruptcy proceedings in order to pursue claims that are otherwise stayed by § 362.

"It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Queenie, Ltd. v. Nygaard Int'l.*, 321 F.3d 282, 287 (2d Cir. 2003) (internal citation omitted); *see Donarumo v. Furlong (In re Furlong )*, 660 F.3d 81, 89–90 (1st Cir. 2011) (the automatic stay "does not extend to the assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock"). Although the automatic stay is broad in scope, "and should apply to almost any type of formal or informal action against the debtor . . . it does not extend to separate legal entities such as corporate

3

affiliates, partners in debtor partnerships or to codefendants in pending litigation." *In re Slabicki*, 466 B.R. 572, 580 (B.A.P. 1st Cir. 2012). However, "[a]lthough § 362(a) stays generally apply only to bar proceedings against the debtor, . . . they may be extended, for instance, when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Id.*

Under 11 U.S.C. § 105(a), the Court may issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y. 1992); *see In re Chateaugay*, 93 B.R. 26, 30 (S.D.N.Y. 1988) (acknowledging bankruptcy court's authority to extend a stay pursuant to its injunctive power under § 105, despite the inapplicability of the automatic stay provision under 11 U.S.C. § 362). "The power of the bankruptcy courts to enjoin certain actions not subject to the automatic stay . . . has been recognized, when such action is interfering improperly with the purposes of the bankruptcy law or the debtor's reorganization efforts." *In re Slabicki*, 466 B.R at 580 (citing *In re Bora Bora, Inc.*, 424 B.R. 17, 23 (Bankr. D.P.R. 2010)). "In the ordinary case involving an injunction against a third party action, there must be some effect on the debtor's estate stemming from the action before there is bankruptcy court jurisdiction to enjoin it." *In re G.S.F. Corp.*, 938 F.2d 1467, 1474-76 (1st Cir. 1999), *abrogated in part on other grounds*, *Connecticut Nat'l. Bank v. Germain*, 503 U.S. 249 (1992). In particular, there are three general categories of justification for staying an action under § 105:

> [c]ourts have stayed creditor actions against non-debtor third parties where [1] they have found that the estate will be adversely affected because the action will impede the non-debtor third party from injecting funds into the reorganization, [2] because the action would detract from the invaluable time and attention the non-debtor third party would otherwise devote to the continued operation of the debtor's business or the reorganization effort, or [3] because the claims against the non-debtor third

4

parties are really claims against the debtor and therefore impair the automatic stay." *In re Third Eighty-Ninth Assocs.*, 138 B.R. at 147. The reach of § 105 equitable powers is not confined to bankruptcy courts; a district court also has "general equity power to stay litigation that could interfere with the reorganization of the debtor." *See Villafane-Colon v. B Open Enters., Inc.*, 932 F. Supp. 2d 274, 280-82 (D.P.R. 2013); *Rubin v. Smith*, 882 F. Supp. 212, 219 (D.N.H. 1995) ("A federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion.").

"When the stay does not apply automatically, the debtor then bears the burden of demonstrating that circumstances warrant extending the stay." *In re Third Eighty-Ninth Assocs.*, 138 B.R. at 146; *see In re A.H. Robins Co.*, 788 F.2d 994 (4th Cir. 1986) (requiring the presence of "unusual circumstances" affecting the debtor's ability to reorganize in order to extend the stay to non-debtor third parties). Nevertheless, "the proof required to extend the stay is not as rigorous as that normally required for injunctions." *In re Adelphia Commc's. Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 1992) (citing *Procter & Gamble Co. v. Chesebrough–Pond's Inc.*, 747 F.2d 114, 118 (2d Cir. 1984)); *see In re G.S.F. Corp.*, 938 F.2d at 1474-76 (staying a non-debtor action without applying or discussing the usual preliminary injunction standard).

Here, the defendants have not met their burden of proving that a stay of this proceeding is warranted. By its terms, § 362 applies to the debtor and does not extend to third parties. Despite the fact that Edge Capital has not itself filed for bankruptcy, defendants propose that the present action will threaten to disrupt the orderly conduct of the bankruptcy. But they have failed to show how litigation of the claims concerning the promissory note would disrupt the bankruptcy

proceeding. Nor have defendants contended that these facts fall into one of the general categories of cases in which third-party non-debtor actions are stayed. Edge Capital is defunct, and it does not stand to inject funds into the debtors' bankruptcy estate, or otherwise help the debtors reorganize. Furthermore, defendants have not contended that this is a "veil-piercing" scenario in which Edge Capital is simply the alter ego of either Jin or Jeannette Ho. Thus, it is not clear that plaintiff is pursuing claims indirectly he would otherwise be unable to pursue directly. The Court therefore declines to exercise its equitable power to stay the suit against Edge Capital.

B. **Motion To Stay or Dismiss as to Edge Capital Under *Colorado River***

Defendants further contend that the Court should dismiss or stay this action in the face of duplicative concurrent proceedings in the Arizona Superior Court. In essence, defendants seek abstention under the *Colorado River* doctrine. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under the *Colorado River* abstention doctrine, a district court may dismiss a case in which federal and state court proceedings overlap and "wise judicial administration" counsels for abstention. *Id.* at 818. "[T]he presence of parallel litigation in state court will not in and of itself merit abstention in federal court." *Jimenez v. Rodriguez–Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (citing *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Instead, exceptional circumstances must exist. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983). A non-exhaustive list of factors for courts to consider includes

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Rio Grande Cmty. Health Ctr. v. Rullan*, 397 F.3d 56, 71–72 (1st Cir. 2005). Ultimately, "the decision whether to dismiss [or stay] a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16 (1983).

As a threshold matter, the concurrent state and federal litigation must actually be parallel. *Jimenez v. Rodriguez-Pagan*, 597 F.3d at 27; *see IFC Interconsult, AG v. Safeguard Int'l. Partners*, 438 F.3d 298, 306 (3d Cir. 2006) ("The threshold requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding."). The federal case and state litigation need not be completely in line, nor is "perfect identity" of issues necessary. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 533 (1st Cir. 1991). To be sufficiently parallel, however, the concurrent cases must generally include the same parties and substantially identical claims and issues. *See id.* at 533-36 (finding parallel proceedings despite lack of perfect identity of parties and issues); *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237 (4th Cir. 2013) ("Under the *Colorado River* abstention doctrine, state and federal actions are parallel if substantially the same parties litigate substantially the same issues in different forums").

Generally, "as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (citing *McClellan v. Carland*, 217 U.S. 268, 282 (1910) (internal quotation marks omitted)). If the state and federal cases are parallel, the Court can only decline to exercise jurisdiction under *Colorado River* if there are "exceptional circumstances" comprising "the clearest of justifications." *See Moses H. Cone*, 460 U.S. at 2.

7

Thus, to satisfy the requirements of the abstention doctrine, the court must (1) find that the two cases in question are actually parallel and (2) that defendant has satisfied its heavy burden to demonstrate exceptional circumstances warranting abstention. *See Colorado River*, 424 U.S. at 817.

The action in the Arizona Superior Court is not sufficiently parallel to the present action as to require analysis of the *Colorado River* factors. Plaintiff originally asserted claims in the Arizona Superior Court for securities registration violations, securities fraud, consumer fraud, fiduciary fraud, rescission based on misrepresentation and concealment, and an accounting of the use made of plaintiff's money. The basis of those claims was defendants' alleged conversion of plaintiff's investments in 2007. The parties settled that dispute, and the Arizona court entered a final judgment ordering defendants to pay the judgment on March 30, 2010.

The promissory note giving rise to the present federal action was not at issue in the original Arizona litigation. In fact, the note did not even exist until after resolution and final judgment in the first case. Furthermore, according to the terms of the note, plaintiff was barred from bringing any action in the Arizona Superior Court for a breach of contract until January 1, 2011, well after judgment was entered in the first case.

Thus, although the parties in the two cases are the same, the issues are distinct. *See Iantosca v. Step Plan Servs., Inc.*, 604 F.3d 24, 32-33 (1st Cir. 2010) (finding abstention inappropriate because *Colorado River* "dealt with essentially parallel proceedings in state and federal court; nothing of the kind is present here"); *Al-Abood ex. rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232-33 (4th Cir. 2000) (suits were not parallel despite having identical parties; "[a]lthough the two proceedings have certain facts and arguments in common, the legal issues

are not substantially the same").

The claims in the Arizona Superior Court arose from fraudulent conduct as to plaintiff's investments; here, the basis of the contract and fraud claims is alleged failure of performance on the post-judgment promissory note. Plaintiff's further filing in the Arizona state court on March 15, 2012, seeking a debtor examination was for the limited purpose of determining defendant's assets. The complaints in both suits allege distinct causes of action and arise out of different transactions. Accordingly, the proceedings in the Arizona Superior Court are not actually parallel to the present case, and analysis of the *Colorado River* factors is unnecessary. *See Amvest Corp.*, 778 F. Supp. 2d at 198 ("If the proceedings are not parallel, then the *Colorado River* inquiry comes to an end."); *Al-Abood*, 217 F.3d at 233 ("Because the district court correctly determined that these suits are not parallel, it had no duty to examine the various abstention factors.").

## III. Conclusion

For the foregoing reasons, the motion to stay is GRANTED as to Jin Ho and Jeanette Ho. The motion to stay or dismiss as to Edge Capital Management I, LLC is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: November 14, 2014